James A. Bloom, AZ Bar No. 026643
Jason H. Kim, CA Bar No. 220279
Kyle G. Bates, CA Bar No. 299114
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jbloom@schneiderwallace.com
jkim@schneiderwallace.com
kbates@schneiderwallace.com

*Attorneys for Relators*

**FILED** ☒   LODGED __
**RECEIVED** __   COPY __

AUG 0 7 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

**SEALED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. DAMIAN WEISS AND SEAN WEISS, <br><br> *Plaintiffs,* <br><br> vs. <br><br> UNITED SEATING AND MOBILITY, L.L.C., d/b/a NUMOTION, <br><br> *Defendant.* | CASE NO  CV20-01573-PHX-SPL <br><br> *QUI TAM* COMPLAINT <br><br> **JURY TRIAL DEMANDED** <br><br> ☐ ORIGINAL <br><br> **FILED *IN CAMERA* AND UNDER SEAL** |

Plaintiffs, the Relators Damian Weiss and Sean Weiss, by and through their undersigned attorneys and pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), file this Complaint against Defendant United Seating and Mobility, L.L.C., d/b/a/ NuMotion ("NuMotion"). In support, Relators allege as follows:

## I.    PRELIMINARY STATEMENT

1.    This is an action to recover damages and civil penalties on behalf of the United States of America, for violations of the False Claims Act arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by the Defendant, its agents, employees, or co-conspirators, or any combination thereof, relating to reimbursement claims made to Medicare for Custom Rehab Technology ("CRT"), including motorized wheelchairs, between 2013 and the present. As explained below, the submission of such claims was caused directly by the fraudulent action of the Defendant and its employees.

2.    The False Claims Act was enacted during the Civil War. Congress amended the False Claims Act in 1986 to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or

1

Government inaction and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

3.    The False Claims Act provides that any person who knowingly causes the submission of a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government.

4.    The Act allows any person having information about a false or fraudulent claim to bring an action for himself and the Government, and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

5.    Relators, Damian Weiss and Sean Weiss, bring this action under the False Claims Act.

## II.    INTRODUCTION

6.    NuMotion is one of the largest sellers of CRT, which includes motorized wheelchairs and related parts, in the United States.  NuMotion sells more than $500 million worth of CRT per year, the majority of which are paid for in whole or in part by Medicare and/or Medicaid.

7.    On information and belief NuMotion has, since at least 2013, presented tens of millions of dollars in claims for reimbursement to Medicare for CRT in this District that failed to comply with the statutory requirements that a physician examine and evaluate the patient to determine whether the wheelchair is medically necessary.

2

Relators have firsthand knowledge of at least three (3) of the 12-13 ATPs employed by NuMotion in Arizona completing therapy evaluations and passing them off to medical professionals to sign in lieu of any evaluation by the therapist of those patients for mobility equipment.

8.    As required by the False Claims Act, 31 U.S.C.A. § 3730(b)(2), Relators provided to the United States Attorney for the District of Arizona a statement of all material evidence and information related to this Complaint. This disclosure statement is supported by substantially all material evidence known to Relators at their filing and establishes the existence of Defendants' false claims.

9.    Relators are individuals with independent, direct, unique, and personal first-hand knowledge of the unlawful practices of NuMotion.

10.    NuMotion has violated several laws, including the False Claims Act, by engaging in numerous fraudulent billing practices to the federal government, through the present and continuing. NuMotion's unlawful activities are described in more detail below.

11.    The purpose of these unlawful activities was to maximize payments from the federal government for the maximum number of wheelchairs possible, without permitting the actual physicians prescribing these chairs to conduct their own evaluation of the patients as required by statute. These unlawful activities increased NuMotion's revenue from the Centers for Medicare Medicaid Services ("CMS") and represent false claims to the federal government.

3

### III.    JURISDICTION AND VENUE

12.    This court has jurisdiction over count ONE set forth below, which is brought under the False Claims Act pursuant to 28 U.S.C.A. §§ 1331 and 1345, and 31 U.S.C.A. §§ 3730, 3732(a). Venue is proper within the meaning of 28 U.S.C.A. § (b) and (c). This court has supplemental jurisdiction over count TWO pursuant to 28 U.S.C.A. § 1367(a).

13.    Venue is appropriate as to Defendant in that Defendant transacts business in this judicial district, and acts proscribed by 31 U.S.C.A. § 1367(a) have been committed by Defendant in this judicial district.

14.    To Relators' knowledge, jurisdiction over this action is not barred by 31 U.S.C.A. § 3730(e): there is no civil suit or administrative proceeding involving the allegations of this complaint to which the United States is a party; there has been no public disclosure of these allegations or transactions; and Relators are an original source of the information upon which these allegations are based.

### IV.    THE PARTIES

15.    Relator Damian Weiss is an individual residing in Salt Lake City, Utah. Damian Weiss brings this action based upon direct and unique information he obtained as a result of his employment with Defendant or those with whom Defendant conducts business. His employment provided him with direct, unique and first-hand information about the overbilling and overprescribing of CRT and sales thereof, as well as the fraudulent claiming of Medicare reimbursement.

4

16. Relator Sean Weiss is an individual residing in Queen Creek, Arizona. Sean Weiss brings this action based upon direct and unique information he obtained as a result of his employment by Defendant as an Assistive Technology Professional, or "ATP." Sean Weiss worked as an ATP for NuMotion from November 2018 until February 2020, and worked as an ATP for several years at a different company in Arizona prior to joining NuMotion.

17. Defendant Numotion is a company focused on marketing and selling CRT. Numotion holds itself out as being headquartered in Brentwood, Tennessee.[1] Numotion transacts business in this District through its offices in Phoenix and Tucson, Arizona.

## V.    FACTUAL BACKGROUND

### *The Process of Selling CRT*

18. Custom Rehabilitation Technology, or "CRT," is sold by private companies like NuMotion who specialize in that area.  There are a few roles that play into a given sale:

    a. Assistive Technology Professionals, or "ATPs:" ATPs are the primary salesperson for the equipment in question.  They conduct an ATP assessment of each patient that includes the taking of basic demographic information and an evaluation of a patient's home environment, current equipment and physical limitations, and ultimately a recommendation for equipment.  These evaluations can take up to one hour.  NuMotion requires an ATP assessment for every piece of equipment that it sells.

---

[1] *See* Numotion, *About Us*, https://www.NuMotion.com/about-us (last visited: February 24, 2020).

5

b.  Specialty Account Managers, or "SAMs":  SAMs assist ATPs with the completion of paperwork and other operations-related steps that do not necessarily require face-to-face client interaction.

c.  Therapists:  Not employed by NuMotion, these medical professionals evaluate each patient to determine what their equipment needs are.

19.     Many patients who require CRT are inpatients at skilled nursing facilities, or SNFs.  At NuMotion, Relator Sean Weiss was assigned to certain SNFs as part of his sales territory.

20.     When a patient's treating physician recommended CRT, a therapist would evaluate the patient and submit a written evaluation to the ATP who, sometimes with the help of a SAM, would generate an order for the appropriate equipment.  Then the ATP would finalize the sale.

21.     ATPs at NuMotion receive a base salary plus commission on every piece of CRT that they sell.  At NuMotion ATPs' commission is tiered, and what tier an ATP falls in is calculated based on quarterly sales annualized over a twelve-month period.  ATPs with annualized sales of less than $600,000 receive 6% of the "net profit" per sale, while those with annualizes sales of between $600,000 and $1,000,000 and $1,000,000 and $1,500,000 receive 9% and 11%, respectively.  ATPs with annual sales in excess of $1,500,000 can receive as much as 13% in sales commissions.

22.     The vast majority of ATPs at NuMotion had between $800,000 and $1,800,000 in sales.

23.     NuMotion carefully tracks the sales revenue of its ATPs, and sends out a monthly e-mail to all of its ATPs nationwide publicizing each individual's sales figures and ranking them accordingly.

24.     In addition to the financial compensation described above, ATPs with high sales are given awards and accolades at corporate retreats, which happen several times per year.

25.     ATPs at NuMotion are highly incentivized to maximize their sales by whatever means necessary.

***NuMotion and Relators***

26.     According to its website, NuMotion is the "leading provider of Complex Rehab Technology in the United States."

27.     NuMotion's website goes on to say that it helps "thousands of people with individually configured, medically necessary mobility products and services."

28.     NuMotion's website champions its honesty, proclaiming that "[w]e are ethical in all our actions."

29.     Unfortunately, NuMotion's own employees and sales force tell a different story.

30.     NuMotion makes hundreds of millions of dollars from the sales of CRT. On information and belief, NuMotion's revenue from such sales exceeds $500 million per year. The majority of the CRT sold by NuMotion are reimbursed, in whole or in part, by Medicare and/or Medicaid.

31. Relators are former employees of NuMotion. Sean Weiss was employed by NuMotion as an Assistive Technology Professional ("ATP") from November 2018 until February 2020. Damian Weiss was employed by NuMotion from November 2018 until February 2019.

***NuMotion's Sales-Driven Process Leads To Unreliable Medical Necessity Evaluations***

32. At NuMotion, ATPs work with outside medical professionals (physicians, occupational therapists, and physical therapists) to evaluate whether a given configuration of assistive wheelchairs or other products are medically necessary for a given patient. ATPs work with patients throughout the entire ordering process. Once a product is deemed medically necessary, a wheelchair order is then prepared and submitted by the ATP.

33. Medicare Part B covers the purchase of CRT, including powered wheelchairs (a subset of medical devices within the broader category of Durable Medical Equipment, or "DME") pursuant to the conditions of the Medicare program.

34. One of the requirements for a mobility device to be covered by Medicare is that the device needs to have what is referred to as a "7 Element Order." NuMotion's Chief Compliance Officer, Andria Pritchett, explains this process in detail on its website. *See NuDigest: Explaining the 7 Element Order: Required Documentation for Medicare-*

8

*Funded Power Mobility*, available at https://www.NuMotion.com/blog/november-2017/explaining-the-7-element-order-required-documenta (last visited Feb. 24, 2020).[2]

35.    In addition to describing the various requirements of the 7 Element Order, NuMotion's Chief Compliance Officer notes that the first frequently-asked question is "can the supplier, a nurse, or a medical assistant complete the 7 Element Order for me?" *Id.*  The answer is that the supplier "is prohibited from completing **any part** of the 7 element order," and cites CMS CMS Program Integrity Manual or Local Coverage Determination (LCD): Power Mobility Devices (L33789) for the requirement that the ordering physician must **personally complete** the 7 Element Order. *See* https://www.cms.gov/medicare-coverage-database/details/lcd-details.

36.    In conjunction with the 7 Element Order, therapists typically provide additional information to Medicare regarding the medical necessity of the device at issue based on additional patient evaluation.  NuMotion recommends that its personnel use a form for this evaluation developed by Houston Methodist Hospital, a non-profit corporation.   NuMotion provides fillable PDF copies of the Houston Methodist Functional Mobility & Wheelchair Assessment Form ("Houston Methodist Assessment Form") on its website.   *See* https://www.NuMotion.com/blog/october-2017/best-practice-houston-methodist-functional-mobili (last visited Feb. 24, 2020).

---

[2] A PDF of this article is attached hereto as **Exhibit 1**.  Additionally, in January 2020 CMS substantially revised the requirements for Medicare reimbursability.  Going forward, the requirements for reimbursability take the form of a Standard Written Order as opposed to a 7 Elements Order.  *See* http://www.hmenews.com/article/cms-ushers-standard-written-order (last visited Apr. 10, 2020).

37.    Some NuMotion ATPs sell more than $5 million worth of equipment individually each year.  Assuming the average price of a motorized chair is $25,000, that translates to more than 166 chairs per year or *more than 4 chairs per week*.

38.    In 2019, Sean Weiss discovered that NuMotion ATPs were completing 7 Element Orders, Houston Methodist Assessment Forms, and other physical therapy evaluation forms for therapists prior to their evaluation of patients and presenting these pre-filled documents to therapists and physicians for their signature.  A redacted sample of these pre-filled evaluations are attached hereto as **Exhibit 2**.

39.    Based on these pre-filled evaluations that its ATPs presented to therapists for their signature, NuMotion was able to greatly increase the total number of wheelchairs it could sell to Medicare.

40.    However, these pre-filled evaluations lacked the requisite finding of medical necessity and were *not prepared by an appropriate medical professional*. Instead, they were completed by NuMotion sales personnel who, as described above, were incentivized to complete as many sales as quickly as possible.  The following chart illustrates the difference between the proper system for order completion under Medicare and NuMotion's system:

## Medicare's Process for Order Completion[3]

| Physician recommends mobility equipment and prescribes the need of mobility equipment. | → | Therapist and Physician perform in-person evaluations (in either order) | → | Physician reviews and signs therapist evaluation/7 Element Order |
|---|---|---|---|---|

| An ATP creates a quote for the recommended equipment. | → | A Detailed Product Description is created based off of the ATP quote. | → | Physician reviews and signs the Detailed Product Description. |
|---|---|---|---|---|

## NuMotion's Process for Order Completion

| Physician recommends mobility equipment and prescribes the need of mobility equipment. | → | An ATP creates a quote for the recommended equipment based on their personal evaluation | → | ~~Therapist and Physician perform in-person evaluations (in either order)~~ | An ATP pre-completes evaluation form for therapist, who signs it |
|---|---|---|---|---|---|

| Physician reviews and signs therapist evaluation/7 Element Order | → | A Detailed Product Description is created based off of the ATP quote. | → | Physician reviews and signs the Detailed Product Description. |
|---|---|---|---|---|

---

[3] https://www.cms.gov/Research-Statistics-Data-and-Systems/Monitoring-Programs/Medicare-FFS-Compliance-Programs/Medical-Review/PMDDocumentationRequirementsNationwide

11

41.    As illustrated above, there are two problems with NuMotion's process.

42.    First, and as Relators have seen firsthand, ATPs are able to insert themselves into the process and substitute their own profit-driven evaluations for those of an actual medical professional.

43.    Second, and even when it works properly, the system is driven by the quote prepared by the salespeople at the beginning rather than the evaluation of the medical professionals.  NuMotion's computer system, VENUE, is designed to promote "dollars-first" sales practices.  As described in the chart above, the VENUE system does not allow 7 Elements Orders to be completed without generating an order quote (called "Revenue Validation") for a wheelchair first.

44.    Thus, it is impossible to determine whether the components of the quoted wheelchair are medically necessary before the price of the chair is confirmed.  This systemic flaw in NuMotion's system exacerbates the impact of orders generated by NuMotion's sales personnel instead of trained physicians, as overly expensive and unnecessary components of wheelchairs are never evaluated by a medical professional before the order is confirmed.

***NuMotion Makes False Claims To Medicare/Medicaid***

45.    Relators have personal, firsthand knowledge of ATPs committing the violations of federal law and regulations described herein, and a sample of corroborating evidence uncovered during Relators' investigation is attached hereto.

46.   The False Claims Act makes liable anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2).

47.   Here employees of NuMotion, including but not limited to those who authored the evaluation forms attached to this Complaint, submitted documentation falsely claiming that chairs produced by NuMotion were medically necessary, resulting in false claims for payment being made to Medicare.  Relators have obtained a sample of false claims, as is typical in cases involving Medicare fraud, and expect that discovery and further investigation will reveal additional false claims made to the government.

48.   Specifically, Relators have firsthand knowledge of the following false claims:

***Incident No. 1, January 2019***

49.   In January 2019, Relator Sean Weiss was assigned to a male patient ("Patient SW") who was transferred from a fellow ATP because he had moved into a skilled nursing facility, or SNF, that Sean Weiss was covering for NuMotion.

50.   The therapist assigned to evaluate Patient SW, who Sean Weiss had known for many years, scheduled an appointment to do the evaluation.

51.   When Sean Weiss arrived at the appointment, the therapist said that "this looks just like an evaluation I just signed" and that Scott Greenbank, another ATP at NuMotion, had just presented her with an evaluation for this patient.

13

52. When Sean Weiss asked whether she had actually evaluated the patient, the therapist said no—she just signed the evaluation. When asked whether the therapist had completed any part of the evaluation, she said that she did not.

53. Indeed, the date on the document was prior to her ever having seen the patient.

54. The therapist provided a copy of the pre-filled evaluation to Sean Weiss, which is attached hereto as part of **Exhibit 2.**

***Incident No. 2, April 2019***

55. In April 2019, Relator Sean Weiss was working with a female patient in the Life Care Center of Paradise Valley ("Patient RM").

56. Patient RM had previously been served by Dwayne Spitzke, a NuMotion ATP and one of the highest-performing ATPs in the company.

57. "Bernadette" was the therapist assigned to evaluate Patient RM.

58. Bernadette told Sean Weiss that Mr. Spitzke had just visited the facility and brought her a pre-completed evaluation form for her to sign. Bernadette initially refused, but ultimately made three changes to the pre-completed evaluation form provided by Mr. Spitzke and signed it.

59. Sean Weiss learned later that Mr. Spitzke had submitted pre-completed evaluations for Patient RM twice before, simply recycling old evaluations.

60. Having personally reviewed the pre-completed form submitted by Mr. Spitzke relating to Patient RM, Sean Weiss observed that there were two different sets of handwriting on the form, that the "Face-to-Face Completion Date" and date next to the

signature line were blank, and that the verbiage on the final page was identical to the two prior evaluations submitted regarding Patient RM.

61.    All of this was extremely atypical, and not allowed.

***Weiss Brings These Incidents To NuMotion Management***

62.    Medical necessity is a condition of payment by Medicare/Medicaid. See Medicare.gov, Wheelchairs & scooters, available at https://www.medicare.gov/coverage/wheelchairs-scooters ("Power wheelchairs are covered only when they're medically necessary.") (last visited Feb. 25, 2020); see also 42 C.F.R. § 424.24.

63.    NuMotion's ATPs' fraudulent certifications of medical necessity, which were actually filled out by NuMotion sales personnel rather than medical professionals, constitutes the false certification of a condition for payment.

64.    Sean Weiss brought this behavior to the attention of his superiors at NuMotion soon after he discovered it.

65.    Specifically, in June 2019 Sean Weiss met with John Pryles (Executive Vice President of Sales), Curtis Watkins (Associate General Counsel), Tim Casey (General Counsel and Chief Compliance Officer) to discuss his concerns. Separately, Damian Weiss brought this behavior to the attention of Margherita Besignano (Regional Vice President) and James Hartman (Executive Vice President, West Division) in January 2019.

66. As of the filing of this Complaint, Relators are unaware of any action taken by NuMotion or the aforementioned executives to reimburse Medicare or Medicaid for the false claims paid by those government entities and received by NuMotion.

67. On information and belief, NuMotion has been engaged in the behavior described herein since at least 2013, and continues to engage in the submission of false claims to this day.

## VI.    CAUSES OF ACTION

### COUNT ONE
### FALSE AND/OR FRAUDULENT CLAIMS
### 31 U.S.C. § 3729(a)(1)(A)

68. Relators restate and reallege the foregoing paragraphs as if fully set forth herein.

69. This is a claim for treble damages and monetary penalties pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 to 3733, as amended.

70. Through the above-described acts and omissions, NuMotion knowingly caused to be presented for payment and approval false and/or fraudulent claims to officers of the United States government. NuMotion reaped the benefits of a presently-unknown number of false claims for reimbursement for powered wheelchairs based on evaluations of medical necessity that were completed by its sales staff rather than any medical professional. As a result of this unlawful activity, these claims were improper.

71. The United States government, which includes the Department of Health and Human Services and Center for Medicare & Medicaid Services officials, their

contractors, carriers, intermediaries and agents, paid and approved claims for payment for such services that should not have been paid or approved.

72.    NuMotion, through the means described above, deliberately and intentionally concealed the false and fraudulent nature of the claims from officials with the United States Federal Government, Department of Health and Human Services and Centers for Medicare & Medicaid Services programs, and other Government officials, their contractors, carriers, intermediaries and agents, in order to induce payment of the false and fraudulent claims.

73.    The United States Federal Government, Department of Health and Human Services and Centers for Medicare & Medicaid Services officials and their contractors, carriers, intermediaries and agents, would not have paid the claims for services or otherwise reimbursed or advanced monies to Defendant had they known the truth.

74.    By reason of the above-described presentment of false and fraudulent claims, the United States has suffered significant losses in an amount to be determined at trial.

## COUNT TWO
## UNJUST ENRICHMENT
### A.R.S. § 36-2918(A)(1)

75.    Relators restate and reallege the allegations in paragraphs 1 through 25 and incorporate them by reference.

76.    The doctrine of unjust enrichment is a "flexible, equitable remedy available whenever the court finds that 'the defendant … is obliged by the ties of natural justice and equity' to make compensation for the benefits received." Arnold & Assoccs., Inc. v.

17

Misys Healthcare Systems, a div. of Misys, PLC, 275 F.Supp.2d 1013, 1024 (D. Ariz. 2003)(citing Murdock-Bryant Const., Inc. v. Pearson, 146 Ariz. 48, 53 (1985)).

77.    In order to establish a claim for unjust enrichment, a plaintiff must show that, (1) it conferred a benefit upon the defendant, (2) the defendant's benefit is at the plaintiff's expense, and (3) it would be unjust to allow the defendant to keep the benefit. See Id.

78.    Here, the United States Federal Government conferred a benefit upon Defendant by way of excessive Medicare reimbursement, which was at the United States Federal Government's expense. Thus, it would be unjust to allow Defendant to keep such reimbursement.

## PRAYER FOR RELIEF

WHEREFORE, Relators request:

A.    That the Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each action in violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

B.    That in the event the United States Government intervenes in this action, Relators be awarded 25% of the proceeds of the action or the settlement of any such claim;

18

C.     That in the event the United States Government does not proceed with this action, Relators be awarded 30% of the proceeds of this action or the settlement of any such claim;

D.     That the Relators be awarded all damages caused by Defendant's unjust enrichment;

E.     That the Relators be awarded all costs, attorneys' fees, and litigation expenses;

F.     That the United States Government and Relators receive all relief, both at law and in equity, to which they may reasonably appear entitled.

Dated:  August 7, 2020          Respectfully submitted,

/s/ _____

James A. Bloom, AZ Bar No. 026643
Jason H. Kim, CA Bar No. 220279
Kyle G. Bates, CA Bar No. 299114
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jbloom@schneiderwallace.com
jkim@schneiderwallace.com
kbates@schneiderwallace.com

*Attorneys for Relators*

19