**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Damian Weiss ex rel. United States of America, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>United Seating and Mobility LLC, et al.,<br><br>Defendants. | No. CV-20-01573-PHX-SPL<br>No. CV-21-01306-PHX-SPL (consol.)<br>No. CV 22-01899-PHX-SPL (consol.)<br><br>**ORDER** |

Before the Court is Plaintiff-Relators' Motion for Attorneys' Fees (the "Motion") (Doc. 40), Defendant's ("NuMotion's") Response (Doc. 45), and Relators' Reply (Doc. 51). The Court now rules as follows.[1]

**I.   BACKGROUND**

This Motion arises out of a *qui tam* litigation settlement between Defendant NuMotion and the United States government. (Doc. 40 at 5). In early 2019, Plaintiff-Relators Damian Weiss and Sean Weiss, both former employees of NuMotion (Doc. 1 at 9), reported concerns to NuMotion management about the company engaging in improper billing and therapeutic practices relating to the sale of Complex Rehab Technology ("CRT") (Doc. 40 at 5–6). NuMotion is a company focused on marketing and selling CRT, which includes motorized wheelchairs and other devices that improve mobility. (Doc. 1 at

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

6; Doc. 40 at 5). NuMotion sells upwards of $500 million in motorized wheelchairs per year, much of which is paid for through Medicare, Medicaid, or similar state programs. (Doc. 40 at 5).

The process by which NuMotion markets and sells its CRT largely occurs through its salespeople known as Assistive Technology Professionals, or "ATPs." (*Id.*; Doc. 1 at 6). ATPs are credentialed to assess potential clients and fit them with the proper CRT equipment, but in order for Numotion to provide CRT to a client, it must have relevant medical documentation, including a specialty CRT evaluation form executed by a non-Numotion licensed physical or occupational therapist or psychiatrist. (Doc. 45 at 7). In their Complaint, Relators alleged that Numotion was engaging in a widespread practice of having its ATPs complete portions of the CRT evaluation forms for the therapists, otherwise known as "scribing," in violation of the False Claims Act ("FCA"). (*Id.* at 6–7). Relators contend that "NuMotion ATPS are incentivized to fill out for themselves the requisite medical evaluation documents so they can reap higher commissions." (Doc. 40 at 5–6).

According to Relators, they reported their concerns about scribing to NuMotion's management starting in January 2019. (*Id.* at 6). NuMotion subsequently self-reported at least one incident of scribing to the U.S. Department of Justice ("DOJ") in May 2019. (*Id.* at 7; Doc. 45 at 8). However, Relators allege that NuMotion "minimized the extent of [its] wrongdoing" during this May 2019 DOJ meeting. (Doc. 40 at 7). Numotion contends that it continued its internal investigation and remediation efforts throughout 2019 and turned over all relevant data to the U.S. Attorney's Office ("USAO"). (Doc. 45 at 8–9). On August 7, 2020, Relators filed their *qui tam* complaint concerning NuMotion's scribing practices, retaining the firm Schneider Wallace Cottrell Konecky LLP ("SWCK") to assist them. (Doc. 40 at 1, 7; Doc. 1). In November 2020, Relators were interviewed by the DOJ for several hours, and in December 2020, Relators provided investigative materials to the DOJ "that provided further information on how widespread NuMotion's practices were." (Doc. 40 at 7). Two additional *qui tam* actions based on the same alleged scribing conduct were

filed against NuMotion in 2021 (the "Vega" complaint) and 2022 (the "Prager" complaint). (Doc. 45 at 14).

In August 2024, NuMotion settled with the USAO for $13.5 million, of which Relators received $2,025,000. (*Id.* at 9). Relators are now seeking $425,030 in attorneys' fees, which is a 1.23 times multiplier on their calculated lodestar of $345,553. (Doc. 40 at 5). They are also requesting $2,887 for costs and expenses. (*Id.*). NuMotion does not challenge Relators' $2,887 in requested expenses (Doc. 45 at 13); however, NuMotion argues that Relators are entitled to an attorneys' fee award of no more than $48,635.90 (*Id.* at 13–14).

## II.   LEGAL STANDARD

In a *qui tam* action pursuant to the False Claims Act ("FCA"), a plaintiff is entitled to receive "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). "After determining that a basis exists for a proper award of attorney fees, the Court must calculate a reasonable fee award. Generally, the Court utilizes the 'lodestar figure,' which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate." *United States ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 350 F. Supp. 3d 938, 940 (D. Idaho 2018) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014) (noting that the lodestar method is the correct framework for calculating reasonable attorneys' fees under federal fee-shifting statutes).

To determine whether requested attorneys' fees are reasonable, courts within the Ninth Circuit look to some or all of twelve relevant "*Kerr*" factors:

> The *Kerr* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988). These factors have also been adopted into the Local Rules of Civil Procedure ("LRCiv"):

(A) The time and labor required of counsel;

(B) The novelty and difficulty of the questions presented;

(C) The skill requisite to perform the legal service properly;

(D) The preclusion of other employment by counsel because of the acceptance of the action;

(E) The customary fee charged in matters of the type involved;

(F) Whether the fee contracted between the attorney and the client is fixed or contingent;

(G) Any time limitations imposed by the client or the circumstances;

(H) The amount of money, or the value of the rights, involved, and the results obtained;

(I) The experience, reputation and ability of counsel;

(J) The "undesirability" of the case;

(K) The nature and length of the professional relationship between the attorney and the client;

(L) Awards in similar actions; and

(M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c)(3).

The party seeking attorneys' fees has the burden of proving the hours worked, rate paid, and "that the rate charged is in line with the 'prevailing market rate of the relevant community.'" *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citations omitted). Ultimately, a district court "has discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) ("The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its

determination, including its decision regarding the reasonableness of the hours claimed by the prevailing party.").

### III. DISCUSSION

NuMotion "does not dispute that Relators are entitled to some reasonable attorneys' fees under the FCA," nor does it dispute that Relators' counsel "expended hours working on this case." (Doc. 45 at 12). However, they take issue with "the number and value of hours SWCK spent" on the case. (*Id.*). In calculating the lodestar amount of attorneys' fees Relators' counsel (SWCK) are entitled to, the Court will consider each of NuMotion's disputes.

#### A. Calculating the Lodestar

##### 1. *Reasonable Hours Expended*

"In calculating the lodestar, district courts 'have a *duty* to ensure that claims for attorneys' fees are reasonable,' and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (citations omitted) (emphasis in original). "In a contested case, a district court ordinarily can rely on the losing party to aid the court in its duty by vigorously disputing any seemingly excessive fee requests." *Id.*

In the present case, NuMotion vigorously disputes Relators' fee requests for a few main reasons: (1) that counsel request fees for "excessive and duplicative" work (Doc. 45 at 14); (2) that they inappropriately request fees for time sent determining how to split Relators' share of the settlement with other relators (*Id.* at 16); (3) that they seek fees for issues concerning the instant fee Motion (*Id.*); and (4) that they have impermissibly block billed a number of fee entries (*Id.* at 18). The Court will address each of these arguments in turn.

###### a. *Excessive and Duplicative Fees*

NuMotion argues that SWCK spent excessive time on obtaining pro hac vice admission to this Court, preparing Relators for interviews, sending emails concerning

5

extensions, working on discovery that was done by Relators themselves, and doing unnecessary research on first-to-file issues. (*Id.* at 14).

As to the hours spent on obtaining pro hac vice admission (Doc. 55-1 at 10), courts "have taken different views on whether fees may be recovered for such work and, if so, whether they may be recovered at the attorney rate or the paralegal rate." *Reg'l Local Union Nos. 846 & 847 v. LSRI, Ltd. Liab. Co.*, 2024 WL 3717512, at *2 (D. Or. Aug. 7, 2024). Here, nearly all the hours billed in relation to pro hac vice admission were entered by Kelle Winter, a paralegal, with only half an hour of total time spent on the issue by attorneys. (Doc. 55-1 at 10). NuMotion has presented the Court with no case law or specific argument explaining why spending 6.4 total hours obtaining pro hac vice admission is excessive, especially where the vast majority of the work was performed by a paralegal, and as such, the Court will not exclude any fee entries on this basis.

Next, NuMotion argues that counsel spent excessive time preparing Relators for interviews with the DOJ. (Doc. 45 at 14; Doc. 55-1 at 11). NuMotion does not make a specific argument for excluding these fees except that "counsel already should have been familiar with the issues when [drafting the] complaint and disclosure statement." (Doc. 55-1 at 11). However, SWCK notes that NuMotion includes both the time entries for the actual interviews and for interview preparations, and that the time SWCK spent reviewing the complaint and further researching the allegations in preparation for the interviews was only 10 total hours. (Doc. 51 at 7). The Court has reviewed these entries and does not find the hours worked unreasonable.

NuMotion also raises the concern that counsel spent excessive time on "emails concerning extensions." (Doc. 45 at 14; Doc. 55-1 at 9). Once again, NuMotion "identifies no authority supporting its implicit argument that time spent drafting a request for an extension of time is *per se* unrecoverable" under the FSA. *Citizens Allied for Integrity & Accountability, Inc. v. Schultz*, 2019 U.S. Dist. LEXIS 79549, at *7 n.2 (D. Idaho May 8, 2019). In motions for attorneys' fees brought pursuant to other federal statutes, district court "have reached different results on the question of awarding attorney fees for motions

seeking extensions of time." *Perea v. Colvin*, 2014 U.S. Dist. LEXIS 196966, at *6 (D.N.M. Feb. 27, 2014). SWCK notes that it "billed 5.5 hours for telephone calls and emails related to multiple requests for seal extensions in a case that spanned multiple years," and that "some of the entries disputed by NuMotion indicate that the telephone call or email at issue concerned more than just the seal extension." (Doc. 51 at 6). The Court therefore agrees with Relators that these entries appear reasonable.

NuMotion's argument that SWCK did "excessive work on 'discovery' when it was Relators—not their counsel—that did the work" is not supported by any specific evidence. (Doc. 45 at 14). Furthermore, the Court notes that a total of only 3.3 hours was spent on these disputed discovery-related tasks. The Court declines to exclude these entries.

Finally, NuMotion argues that SWCK "spent over 85 hours unreasonably researching and analyzing straightforward, established first to file issues." (*Id.*). They argue that because the language of the FCA clearly and unambiguously establishes a first-to-file bar, which prevents successive plaintiffs from filing actions based on the same facts, SWCK should not have spent as much time as it did researching, analyzing, and discussing first-to-file issues. (*Id.* at 14–15). Specifically, NuMotion notes that Relators' complaint was filed "nearly a year before the next in time Vega complaint." (*Id.* at 15). SWCK, however, argues that (1) "many of the time entries NuMotion disputes go beyond research and include other tasks, such as calls and communications with DOJ"; and (2) the time counsel spent on first-to-file issues was both reasonable and a "conservation of resources," as "SWCK suspects that had the parties not resolved the first-to-file issue prior to settlement, Relators Vega and Prager may have chosen to pursue their individual cases, and NuMotion likely would have filed a motion to dismiss the two cases based on the first-to-file bar." (Doc. 51 at 7–8).

The Court acknowledges that, based on the recorded time entries, there may have been duplicative work done on the first-to-file issue. In January–April 2023, Mark Ram, Matthew Weiler, Raymond Levine, and Janis Gorton all made billing entries pertaining to research, analysis, or discussion of the first-to-file issue. (Doc. 55-1 at 12–18). However,

as the Ninth Circuit has previously acknowledged,

> [D]etermining whether work is unnecessarily duplicative is no easy task. When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (emphasis in original). The present case proceeded over several years: the first entries related to the first-to-file and fee-sharing issues are from October 2021 (Doc. 55-1 at 12), while the last entries are in August 2024 (*Id.* at 17–18). This Court has no basis on which to decide which of these entries, specifically, are duplicative.

The Ninth Circuit has found that "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno*, 534 F.3d at 1112. As discussed further below, the Court will exercise its discretion to impose a 10 percent "haircut" on the requested fees, which will help account for any duplicative work spent on first-to-file issues.

      b.  *Fee Sharing Agreement*

NuMotion contests time entries from SWCK that "reflect discussions about a fee sharing agreement among Relators here, Relator Vega, and Relator Prager" because the agreement "added nothing to the government's recovery." (Doc. 45 at 16). However, Relators' counsel argues that the fee-sharing agreement saved government resources that would otherwise have been expended on additional litigation. (Doc. 51 at 8).

The only case law cited by NuMotion to support its argument is *Kingston v. Int'l Bus. Machines Corp.*, 2022 WL 17884456 (W.D. Wash. Dec. 23, 2022). In that case, the district court did not award fees on time spent obtaining financing for a law firm, noting that it was "a business decision exclusively within the purview of that law firm," and was therefore more appropriately billed to the management of the firm, not to an opposing

party. *Id.* at *9. The situation here is easily contrasted with that in *Kingston*. Here, SWCK is not seeking fees for business that was done for the sole benefit of their firm, such as obtaining financing. Rather, the disputed entries pertain to settlement strategy, which directly involved Relators, the relators in the other cases against NuMotion, and the DOJ. (Doc. 55-1 at 19–30). These entries are all for work that was necessary to resolve Relators' own case and facilitate the ultimate settlement between NuMotion and the United States government. Furthermore, Relators' counsel specifically notes that they "removed time entries that were for tasks that appear non-compensable, such as time that was spent strictly negotiating the relators' share in connection with the DOJ settlement," and that the remaining entries "were for the dual purpose of determining the fairness and adequacy of the DOJ settlement." (Doc. 40 at 20–21). The Court therefore declines to exclude any fee entries on this basis.

      *c.*  *Fees on Fees*

Next, NuMotion argues that SWCK seeks "grossly inflated" and "duplicative" fees for work on the present fee Motion and asks the Court to exclude 45.8 disputed hours. (Doc. 45 at 16; Doc. 55-1 at 31). Additionally, NuMotion argues that the fees on fees should be reduced because SWCK failed to comply with LRCiv 54.2(d)(1), which requires counsel to attach a statement of consultation to a fee motion "certifying that, after personal consultation and good faith efforts to do so, the parties have been unable to satisfactorily resolve all disputed issues relating to attorneys' fees or that the moving counsel has made a good faith effort, but has been unable, to arrange such conference." (Doc. 45 at 17).

The Ninth Circuit has held that "[a] district court can reduce a fees-on-fees request in proportion to the applicant's success on the underlying petition." *United States ex rel. Sant v. Biotronik, Inc.*, 716 F. App'x 590, 593 (9th Cir. 2017) (determining that a 30% reduction of requested hours for work performed on a fee petition was warranted where the court had denied more than 70% of the requested fees on the underlying litigation). Here, in contrast to *Biotronik*, the Court is denying a much smaller overall percentage of SWCK's requested fees. Nonetheless, the Court agrees that SWCK has not entirely complied with

LRCiv 54.2(d)(1), as the instant Motion was filed before SWCK met and conferred with NuMotion's counsel. (Doc. 45 at 17). In reply, SWCK notes that they were in the process of negotiating a settlement offer regarding Relators' claim for attorneys' fees, and that they scheduled a call for September 6, 2024 (the day *after* the Motion was due) to discuss that proposed settlement. (Doc. 40-1 at 2). However, because SWCK's motion for extension (Doc. 39) was not granted, they were forced to file before that call was completed as to not miss their filing deadline. (Doc. 51 at 11). The deficiency of a fee applicant's statement of consultation "is not necessarily fatal to its request for fees." *Skydive Arizona, Inc. v. Quattrocchi*, 2011 WL 1004945, at *1 (D. Ariz. Mar. 22, 2011). However, other courts in this District have reduced fee awards based on non-compliance. *E.g.*, *Jarman v. Am. Fam. Ins. Co.*, 2021 WL 1947509, at *3 (D. Ariz. May 14, 2021) (subtracting 16.3 hours spent preparing fee application); *Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, at *4 (D. Ariz. July 10, 2023).

As mentioned above, the Court will exercise its discretion to apply an overall 10% "haircut" to the fees requested by Relators' counsel, which the Court also finds a sufficient penalty for SWCK's failure to comply with 54.2(d)(1) in this instance.

### d. Block Billing

Finally, NuMotion contests a number of entries for the alleged use of impermissible block-billing practices. (Doc. 45 at 18–19). True block billing defies the Supreme Court's warning that attorneys' fees applicants "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," *Hensley*, 461 U.S. at 437, and also violates LRCiv 54.2(e). While the entries disputed by NuMotion do tend to list multiple tasks together, those tasks generally appear to be related to one another; furthermore, none of the entries exceed 2.20 hours; in fact, most of them do not even exceed 1 hour of work billed. (Doc. 55-1 at 33–34). *See United States v. Allergan, Inc.*, 2023 WL 4754637, at *5 (C.D. Cal. July 24, 2023) (noting that "[c]ourts in the Ninth Circuit generally reduce entries exceeding one hour" but that "[b]lock-billed entries are permissible where entries contain sufficient specificity for courts to discern whether the

time spent performing tasks was reasonable"). The Court therefore does not find that a reduction in the lodestar is warranted on this basis.

### 2. *Reasonable Hourly Rate*

In addition to determining whether the number of hours expended on a case are reasonable, the district court must also "evaluate if the hourly rates at which [a fee applicant] seeks compensation for those hours are reasonable." *United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, 2020 WL 8678018, at *3 (E.D. Wash. June 3, 2020). Here, SWCK states that "[t]he lead attorneys on this case, Mr. Weiler and Janis Gorton, have billing rates of $1100 and $985 per hour, respectively"; that "Mr. Kim's rates of $1295 are reasonable"; that the "rates for James Bloom, Raymond Levine, Kyle Bates, Mark Ram, and Ryan Hecht," which range from $690 to $1,155, "are all reasonable"; and that "$450 an hour is reasonable for Kelle Winter, who performs paralegal services at SWCK." (Doc. 40 at 17–18). In the affidavit submitted by Mr. Weiler, he states that "SWCK billing rates are the same for its contingency clients"—including Relators, in this case—"as for any other client," and that SWCK charges its large business clients "the same hourly rates, when it does hourly advisory work, as it does in the fee application it submits here." (Doc. 41 at 7). SWCK argues that the rates it seeks "are reasonable given the complexity of *qui tam* cases, the experience of counsel," and the other *Kerr* factors. (Doc. 51 at 13).

It is not entirely clear whether the rates listed in SWCK's time entries (Doc. 43-4) are the hourly rates actually charged in *this* case, or whether the rates are simply those they deem "reasonable" or that they would charge to large business clients (which Relators are not). NuMotion emphasizes that "Relators notably do not say their counsel ever *receives* this rate from paying clients." (Doc. 45 at 19). Without knowing the actual rate SWCK charged to Relators in this case, it is more difficult for this Court to determine what constitutes a reasonable hourly rate in a *qui tam* case that was filed in the District of Arizona yet litigated by a law firm based in California. SWCK acknowledges that it "could find no precedent in Arizona regarding reasonable hourly rates for attorneys in False Claims Act

cases, nor did NuMotion cite any in its response." (Doc. 51 at 11). Rather, SWCK's proposed rates "are based on the prevailing rates for attorneys with comparable experience in the U.S. District Court for the Northern District of California, where SWCK is based." (Doc. 41 at 7). NuMotion, for its part, argues that this Court should simply apply "reasonable rates in Arizona for AM200 firms . . . which, for SWCK, is overly generous since SWCK is not an AMLaw firm at all." (Doc. 45 at 20).

Courts within this District have found that "[t]he prevailing market rate in the community [in which the district court sits] is indicative of a reasonable hourly rate." *Orman v. Cent. Loan Admin. & Reporting*, 2020 WL 919302, at *2 (D. Ariz. Feb. 26, 2020) (quoting *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)); *see also Innovative Sports Mgmt. Inc. v. Singh*, 2020 WL 3574582, at *2 (D. Ariz. July 1, 2020). However, the Ninth Circuit has held that, under another federal fee-shifting statute, non-forum rates may be applied "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates*, 987 F.2d at 1405; *see also United States ex rel. Savage v. Washington Closure Hanford LLC*, at *3 (E.D. Wash. Aug. 27, 2019).

This Court must also evaluate counsel's degree of experience, expertise, and specialization in the context of the *Kerr* and LRCiv 54.2(c)(3) factors. SWCK argues that the instant litigation required significant time and labor (over 400 hours) (Doc. 40 at 11); that it involved a novel set of facts, given that "to Relators' knowledge, liability for scribing has never been litigate under the False Claims Act" (*Id.* at 12); that SWCK possesses the specialized skill set necessary to perform *qui tam* litigation (*Id.* at 13); that it is requesting rates similar to those sought by NuMotion's counsel in a *qui tam* matter in Houston, Texas (*Id.* at 14); that the $13.5 million settlement obtained is "an excellent result by the standards of healthcare fraud *qui tam* litigation" (*Id.* at 15); that SWCK has "substantial experience in litigating *qui tam* cases" (*Id.* at 16); and that "[c]ourts have granted substantially larger fee requests in *qui tam* litigation that settled for less than this action" (*Id.* at 18–19).

However, Relators' counsel acknowledges that they have not had to turn down "any other engagement specifically due to this *qui tam* case." (*Id.* at 13).

If the Court were to apply the generally prevailing rates in the Phoenix, Arizona marketplace, the billing rates requested by SWCK are unquestionably excessive. (Doc. 45-1 at 6). *See, e.g.*, *Washington v. Freedom of Expression LLC*, 2022 U.S. Dist. LEXIS 181707, at *4 (D. Ariz. Oct. 4, 2022) (collecting cases in Arizona awarding attorneys' fees at rates below $500 for associates). However, SWCK has made its case that *qui tam* litigation requires a specialized skill set and justifies hiring specialized, rather than local, counsel. (Doc. 40 at 12–13). The Ninth Circuit has also described *qui tam* cases as "complicated" and involving "complex legal and factual issues." *Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1128 (9th Cir. 2007). This justifies SWCK's request for non-forum rates.

However, even when applying market rates from cases in the Northern District of California, rather than the District of Arizona, SWCK's requested rates are still high. (Doc. 41-12 at 2 (noting that the top 100 U.S. law firms charged an average rate of $961/hour in 2023)). *See also, e.g.*, *Franchek v. Workrite Ergonomics, LLC*, 2022 WL 3137928, at *15 (N.D. Cal. May 9, 2022), *report and recommendation adopted*, 2022 WL 3137918 (N.D. Cal. May 31, 2022) (awarding fees based on partner rates of $919/hour and $850/hour for highly experienced attorneys in FCA *qui tam* litigation); *see also In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) (noting that in 2015, reasonable hourly rates for partners in the Bay Area ranged from $560 to $800); *Miletak v. AT&T Servs., Inc.*, 2020 WL 6497925, at *6 (N.D. Cal. Aug. 3, 2020) ("District courts in Northern California have found that rates of $475-$975 per hour for partners and $300-490 per hour for associates are reasonable."). The Court will therefore reduce the reasonable hourly rate for partners on this case to $950/hour.

SWCK also urges this Court to apply rates on par with *Allergan, Inc.*, 2023 U.S. Dist. LEXIS 128732, at *8. (Doc. 40 at 13–14; Doc. 51 at 13). That case awarded a rate of $400/hour for litigation support personnel in FCA *qui tam* litigation, which is lower than

13

the $450/hour rate that SWCK is seeking for its paralegal. Other cases in the Northern District of California have awarded much lower rates as well. *See, e.g.*, *In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *12 (noting that rates for paralegals and litigation support staff range from $150 to $240 in the Bay Area); *TPCO US Holding, LLC v. Fussell*, 2023 U.S. Dist. LEXIS 139089, at *7 (N.D. Cal. Aug. 9, 2023) (approving a $305/hour billable rate for a paralegal based on her two decades of experience). Accordingly, the Court will apply a rate of $400/hour for SWCK's paralegals.

Finally, the Court finds that an hourly rate of $750/hour for SWCK's associates to be an appropriate adjusted rate, which is within the range of the various rates requested by SWCK for attorneys with the classification "Of Counsel / Associates" in this litigation. (Doc. 53-4 at 2–28). *See, e.g.*, *In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (approving rates of $250–660 for associates and $365–420 for staff attorneys in complex shareholder derivative action); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (noting that billing rates for most non-partner attorneys were under $500 in complex class action settlement). This rate accounts for the complexities of *qui tam* litigation, the experience of counsel, and the other *Kerr* factors and considerations listed within LRCiv 54.2(c)(3).

### B. Calculation and Multiplier

With the above modifications to SWCK's requested billing rates, the Court can now calculate the appropriate lodestar. The Court finds that based on the time entries submitted to the Court, SWCK billed a total of 144.5 hours to partners, 194.7 hours to associates and "of counsel," and 25 hours to paralegals and law clerks. (Doc. 53-4). The reasonable loadstar, based on rates of $950/hour for partners, $750/hour for associates and "of counsel," and $400/hour for paralegals and law clerks, therefore comes out to $293,300. However, as previously noted, this Court will subtract a 10% "haircut" to account for potentially duplicative work, and because SWCK failed to comply with LRCiv 54.2(d)(1). The resulting lodestar amount is $263,970.

However, SWCK also requests this Court to apply a 1.23 multiplier "for their efficiency and advocacy in achieving the instant result." (Doc. 40 at 19). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *see also Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) ("The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare and exceptional cases'") (internal quotation marks and citations omitted). "Thus, courts may also consider the factors listed in LRCiv 54.2(c)(3) when determining the reasonableness of an attorneys' fee request." *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 491 (D. Ariz. 2019). However, many of these factors will have already been considered in the lodestar analysis, such as the time and labor required by counsel, counsel's skill, the customary fee in this type of case, and the experience and reputation of counsel. *See id.*; *see also, e.g.*, *Fritch v. Orion Manufactured Hous. Specialists Inc.*, 2023 WL 8781248, at *7 (D. Ariz. Dec. 19, 2023), *aff'd*, 2024 WL 4449428 (9th Cir. Oct. 9, 2024).

The primary justification given by SWCK for this Court to apply a multiplier is that "Relators' [requested] lodestar of $345,553 is less than 3% of the $13.5 million settlement achieved here." (Doc. 40 at 19–20). However, SWCK does not present sufficient evidence that this result is outstanding, as the quality of representation and successful results obtained were already accounted for within the Court's adjusted hourly billing rates. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 567 (1986), *supplemented*, 483 U.S. 711 (1987). Not every *successful* result is tantamount to an *exceptional* or *outstanding* result. *See Blum v. Stenson*, 465 U.S. 886, 899 (1984) (noting that a district court "may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'").

Therefore, the Court declines to apply a multiplier to the lodestar fee amount.

Accordingly,

**IT IS ORDERED** that Plaintiff-Relators' Motion for Attorneys' Fees (Doc. 40) is **granted as modified.**

**IT IS FURTHER ORDERED** that Plaintiff-Relators shall be granted **$263,970** in attorneys' fees and **$2,887** in expenses.

Dated this 28th day of October, 2024.

Honorable Steven P. Logan
United States District Judge